**In re T. Carlton RICHARDSON, Respondent.**

**No. 90–1539.**

District of Columbia Court of Appeals.

Argued Dec. 13, 1991.
Decided Jan. 17, 1992.

---

Before TERRY and KING, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

This matter comes to us from the Board on Professional Responsibility (the Board) as a reciprocal discipline case that arose because the Supreme Court of Florida disciplined respondent for charging clearly excessive attorney's fees. The Florida court suspended respondent for ninety-one days, required proof of fitness for reinstatement, imposed a two-year probation period after reinstatement, and required the payment of $15,470 in restitution and $5,144.81 in costs for the disciplinary process.[1] The Board in its report concluded that a *de novo* hearing was not required and that reciprocal discipline was warranted. However, it recommended a different sanction, a suspension of ninety-one days followed by automatic reinstatement. We agree with the Board's conclusions. Accordingly, we adopt the Board's recommendation and incorporate the Board's report as an appendix to this opinion.

■ The standards for imposition of reciprocal discipline are set forth in D.C.Bar R. XI, § 11(c) which provides:

(c) *Standards for reciprocal discipline.* Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

Unless there is a finding by the Board under (1), (2), or (5) above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has

1. *The Florida Bar v. Richardson,* 574 So.2d 60 (Fla.1990) (revised opinion of February 14, 1991, *nunc pro tunc* April 19, 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991).

been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

Although respondent does not rely specifically on any of the five enumerated exceptions of R. XI, § 11(c), he nevertheless claims the Florida judgment is deficient and that he is therefore entitled to a *de novo* hearing before the Board before discipline can be imposed by this court. Specifically, respondent claims: (1) he was denied due process and equal protection because the selection criteria of the Florida grievance committee, which found probable cause, resulted in no representation of members of respondent's race; (2) Florida Bar Counsel's presence during the deliberation of the grievance committee violated due process; (3) the probate court in Florida, which found respondent had charged excessive attorney's fees, lacked subject matter or personal jurisdiction; (4) the Florida Supreme Court denied due process when it imposed a sanction more severe than recommended by the referee without giving respondent an opportunity to be heard on that point; (5) the Florida Bar regulation on fees for legal services violates federal antitrust laws; (6) the Florida Bar regulation governing fees for legal services is void for vagueness; and, (7) the evidence in the Florida proceeding was defective in several respects and should not be used as a basis for reciprocal discipline.[2] These points were all raised and rejected by the Florida Supreme Court either in the initial appeal or in one of the orders responding to the two petitions for rehearing. *The Florida Bar v. Richardson, supra* note 1, 574 So.2d at 62.[3] We conclude that, giving due deference to decision of another jurisdiction in a reciprocal discipline case, the principles of collateral estoppel obligate us to accept the holding of that court. *See, e.g., In re Loigman,* 582 A.2d 1202, 1203 (D.C.1990); *In re Velasquez,* 507 A.2d 145, 147 (D.C.1986); *Ali Baba Company v. Wilco, Incorporated,* 482 A.2d 418, 421–22 (D.C.1984).

■ In addition, we agree with the Board's recommendation that a lesser sanction should be imposed for the reasons set forth in its report. Bar Counsel supports that recommendation and respondent has noted that he takes no exception to it.[4] The only issue remaining then is to determine the time period for the ninety-one day suspension.

■ On June 24, 1991, this court entered an order temporarily suspending respondent from the practice of law pursuant to Rule XI, § 11(d). On July 31, 1991, the Board issued its report recommending a suspension of ninety-one days commencing on June 24, 1991, the effective date of the temporary suspension ordered previously. On September 18, 1991, respondent filed a petition for dissolution of the temporary order on the grounds that the ninety-one day suspension term would expire on September 23, 1991. We granted the petition on December 18, 1991. Bar Counsel, in its opposition to respondent's September 18, 1991, petition, informed this court that respondent failed to satisfy the notice requirements of District of Columbia Bar Rule XI, § 14 until September 18, 1991. Therefore, reasoned Bar Counsel, the suspension should commence on that date and not expire until December 18, 1991. We are satisfied that respondent has served

---

2. Respondent's brief at 16–17.

3. Respondent raised twelve numbered points with the Supreme Court of Florida. Points 6, 7, 11, 9, 8, and 2, 3, 4 considered by the Supreme Court of Florida correspond respectively to points (1), (2), (4), (5), (6), and (7) in this proceeding.

    The issue raised by point number (3)—whether the Florida trial court which found that respondent had charged excessive attorney's fees had jurisdiction to order reimbursement—was considered and decided against respondent by the Florida court in *Richardson v. Jones,* 508

So.2d 739 (Fla.Dist.Ct.App.), *review denied,* 518 So.2d 1277 (Fla.1987). Furthermore, that issue has no relevance to the disciplinary case before us. Respondent was disciplined in Florida after findings were made by a referee and adopted by the Florida Supreme Court in a separate disciplinary proceeding. *The Florida Bar v. Richardson, supra* note 1. The result of that proceeding serves as a basis for imposition of reciprocal discipline.

4. Respondent's brief at 17.

the suspension recommended by the Board and approved by us. No further period of suspension is required.

It is therefore ORDERED that respondent shall be, and hereby is, suspended from the practice of law in the District of Columbia for ninety-one days, commencing June 24, 1991.

## APPENDIX

## DISTRICT OF COLUMBIA COURT OF APPEALS

## BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: T. CARLTON RICHARDSON, Respondent.

Bar Docket No. 208–90

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This Board has to determine if the discipline received by Respondent from the Supreme Court of Florida should be imposed reciprocally in our jurisdiction based upon violations of the Code of Professional Responsibility. If we find that the Florida proceeding has satisfied the standards for reciprocal discipline, then Respondent should receive identical discipline in this jurisdiction. D.C.Bar Rule XI, § 11(c).

Respondent was found by the Supreme Court of Florida to have violated Rule 2–106(A) (charging a clearly excessive fee). That court suspended Respondent for ninety-one days beginning on May 21, 1990, required proof of fitness for reinstatement, imposed a two-year probationary period after reinstatement, and required Respondent to pay $15,470 in restitution, plus $5,144.81 in cost for the disciplinary process. Respondent filed numerous objections in Florida and requested a rehearing, which has since been denied. *The Florida Bar v. T. Carlton Richardson,* [574 So.2d 60] Supreme Court of Florida, No. 73,214 (February 14, 1991).

Before this Board Respondent presses many of the same objections he proposed to the Supreme Court of Florida. This Board after reviewing this case determines that reciprocal discipline is warranted, but we decide that a different sanction should be imposed here. *See, In re Reid,* 540 A.2d 754 (D.C.App.1988); D.C.Bar Rule XI § 11(g).

## I. DISCIPLINARY VIOLATIONS

### ESTATE PROBATE

The case against Respondent involves two separate incidents both concerning Mr. and Mrs. Roosevelt Jones. Mr. Jones, a seventy-four year old longshoreman and his seventy-three year old wife approached Respondent on March 31, 1983 to probate the estate of Leula King of Tampa, Florida. Ms. King had died fifty years earlier and had an estate consisting of one piece of real estate valued at $22,000, with no outstanding debts whatsoever. Mr. and Mrs. Jones agreed to pay Respondent a $500 origination fee and 10% of the estate's value. The origination fee was to be included within the percentage of the estate received by Respondent.

Between February 24, 1984 and July 5, 1985, Respondent prepared the necessary documents and charged the Jones $10,-550.99. When the Jones couple indicated that they did not have the funds to pay the fee, but told Respondent they did have a debt-free home, Respondent arranged for them to obtain a loan. A substantial portion of the $13,000 loan was used to satisfy Respondent's fee.

Subsequently, the Joneses retained another attorney to complete the estate work, discharged Respondent and sought the return of the fees paid. Judge Dennis Alvarez of the Hillsborough County Circuit Court, Probate Division heard the petition of the Jones couple for the return of the fee paid to Respondent. Later, during the disciplinary proceeding, Respondent testified that a portion of this fee included a monthly cover charge he levied against all his clients to enable Respondent to do *pro bono* work. He billed the Jones couple twenty minutes for each phone call, even if no one answered the phone and finally, he billed a minimum of forty-five minutes per page for each document he prepared for the estate. The Jones couple presented

expert testimony which told the court that $2,500 was a reasonable fee based upon the difficulty of the work required by the estate, with approximately $150.29 in cost incurred. Judge Alvarez' initial decision was appealed by Respondent.[1]

On remand, Judge Alvarez' final determination was that the Jones couple had paid Respondent $10,550.99. He further determined that reasonable counsel fees and costs for Respondent to have charged the Jones couple would have been $2,650.29 and thus required Respondent to reimburse the King estate $7,970, reasonable counsel fees of $6,500 for pursuit of this reimbursement, plus costs of $1,000 for two proceedings before the Circuit Court. Judge Alvarez entered final judgment against Respondent for $15,670 plus interest for the estate of Ms. King. Respondent's appeal to the Second District Court of Appeals was rejected as untimely.

WILL PREPARATION

Mr. and Mrs. Roosevelt Jones also retain Respondent to prepare their wills. Their combined income was less than $14,000 and their total estate was no more than $75,-000. The Jones couple agreed to pay $85.00 for the initial consultation, a $750.00 origination fee and a minimum attorney's fee of $1,250. The couple eventually paid Respondent $1,444.93 for the will preparation. However, they also receive an invoice for the sum of $1,273.97 for general services which included a finder's fee connected to Respondent's effort in locating a loan to pay his fees.

II. FLORIDA DISCIPLINARY PROCEEDINGS

When the Jones couple filed a complaint with the Florida State Bar, Respondent made various challenges before the grievance committee and later before the referee. During the disciplinary hearing before the referee, Judge Thomas E. Penick,

Jr., 6th Judicial Circuit Court, expert testimony indicated that a reasonable fee for the entire probate matter would have been $2,500, a generous fee for the preparation of both wills would have been $400.00 and for the general services, Mr. and Mrs. Jones should have been charged no more than $200.00 or $300.00.

The referee determined that Respondent had violated the Florida Code of Professional Responsibility, Disciplinary Rule 2-106 (a lawyer shall not charge a client a clearly excessive fee). Bar Counsel argued for a ninety-one day suspension. However, the referee recommended the following discipline:

(1) public reprimand,

(2) six months supervised probation,

(3) twelve hours of continuing education courses on attorney billing and fee practices,

(4) proof of rehabilitation at the termination of the probationary period in the area of billing and fee practice, to possibly include taking the professional ethics portion of the bar exam,

(5) payment of the amount of restitution determined by Judge Dennis Alvarez, and

(6) Payment of the cost of the disciplinary proceedings.

Before the Supreme Court of Florida, Respondent lodged twelve objections: (1) whether the use of illegally obtained evidence by the grievance committee panel and the referee violated Respondent's due process rights; (2) whether the expert witness who testified was disqualified based upon conflict of interests; (3) whether the expert's testimony was reliable; (4) whether there was sufficient evidence under the clear and convincing standard; (5) whether the referee abused his discretion in failing to make specific findings in relation to the excessive fee; (6) whether the exclusion of Afro-American people from the grievance committee violated due process[2]; (7)

---

1. The Second District Court of Appeals affirmed but remanded for recalculation of the fees paid by the Joneses. *Richardson v. Jones*, 508 So.2d 739 (Fla. 2d DCA), *review denied*, 518 So.2d 1277 (Fla.1987). The Supreme Court of Florida

thereafter denied Respondent's writ of mandamus. *Richardson v. Alvarez*, 525 So.2d 880 (Fla. 1988).

2. We would note that before the referee Respondent specifically stated: "I am not arguing, Your

whether Bar Counsel participated in the deliberation of the grievance committee after the hearing without Respondent or his counsel present; (8) the standard to determine an excessive fee is vague; (9) whether the standard as applied is an impermissible restraint of trade in violation of the federal antitrust laws; (10) whether a public reprimand was a reasonable sanction; (11) whether Respondent received sufficient notice and an opportunity to be heard on the issue of costs imposed; and (12) whether the imposition of costs were permissible or reasonable under the circumstances.[3]

The Supreme Court of Florida sustained the finding that Respondent had violated DR 2–106. They recognized that there are many factors which will impact upon an attorney's fee. However, they felt that all the time an attorney spends on a case is not necessarily the amount of time which can be billed to the client. There must be some determination of what is reasonable to accomplish the task. They further found that there was "absolutely no justification" for billing the Jones couple for twenty minutes for every phone call, regardless of the duration, or forty-five minutes for each page of the documents Respondent developed. Additionally, the Court determined it was improper to charge the Jones couple for *pro bono* work done for others.

The Supreme Court of Florida found that the misconduct of Respondent was not minor. It suspended him for ninety-one days with reinstatement after proof of rehabilitation and a two-year probationary period. In conformity with the decision of Judge Alvarez, it found that Respondent must

pay the final judgment of $15,470, plus interest, prior to reinstatement. Additionally, Respondent had to pay $5,144.81 in costs for the disciplinary procedures. *The Florida Bar v. T. Carlton Richardson,* [574 So.2d 60] Supreme Court of Florida, Revised Opinion, February 14, 1991, *nunc pro tunc* April 19, 1990.

## III. THIS BOARD'S REVIEW

We have reviewed each of the standards for our evaluation of the actions taken by the State of Florida under D.C.Bar Rule XI § 11(c) and we find that Respondent should not receive a hearing *de novo* in our jurisdiction based on the misconduct in that state. The measure of our review is the following:

A. The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process. In Florida, Respondent had multiple appeals of the initial determination of the probate court and the disciplinary proceedings. In fact, based upon the pleadings and arguments of Respondent the Supreme Court of Florida modified its April 19, 1990 original opinion on October 30, 1990 ("Corrected Opinion") and again on February 14, 1991 ("Revised Opinion"). The record clearly evidences that Respondent had notice of the charges with ample opportunity to respond and be heard.

B. There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject. We noted above, *supra*, pp. 5–6, that Respondent raised similar objections before this Board which he put before the Supreme

---

Honor, that the men and women who sat on the panel did not give their best, I am not arguing that they were in any way prejudiced towards me." *The Florida State Bar v. T. Carlton Richardson,* [574 So.2d 60, 61] Supreme Court of Florida, No. 73,214, Revised Opinion, p. 5 (February 14, 1991, *nunc pro nunc* April 19, 1990).

Moreover, Respondent argues before this Board that there were no Afro–Americans on the grievance committee or the panel which conducted the probable cause hearing. He does not—more importantly—allege that Afro–Americans were systemically excluded by the State of

Florida from serving on either body. *Petition to Stay and/or Vacate Temporary Suspension and Request for Expedited, Emergency and Protective Relief,* filed June 26, 1991. The absence of such an argument is fatal to his contentions in this area.

3. Respondent presses the majority of these same objections before this Board, with the exception of those listed in nos. 2, 3 and 4. *Respondent's Opposition to Reciprocal Discipline,* filed February 13, 1991.

Court of Florida. Each objection was adequately addressed by the Florida state system. Many of Respondent's arguments in relation to the calculations of what he charged the Jones couple and what Respondent should be responsible for in the way of reimbursements caused a revaluation by the Supreme Court of Florida of its opinion.[4]

Before the hearing panel and subsequently before the referee in Florida Respondent had the opportunity to testify, make arguments and present evidence. Bar counsel in Florida presented expert testimony to provide that state's system with an appropriate yardstick by which to gauge Respondent's actions.

We agree with the Supreme Court of Florida when they said:

> The significant factors in determining a reasonable fee in this case include the amount involved and the benefit to the client, neither of which is disputed. Particularly important is the amount of time that should have been devoted to accomplish these particular tasks. We find that any prudent lawyer would find the fees in this case were clearly excessive. Revised Opinion. p. 9.

C. The imposition of the same discipline by the Court would result in grave injustice. The District of Columbia Court of Appeals previously sustained a public reprimand when an attorney was reciprocally disciplined for charging an illegal fee. *In re Hudock,* 544 A.2d 707 (D.C.App.1988). There the attorney charged a contingent fee of $5,000 from a $15,000 recovery in Virginia after the Workman's Compensation Board determined the proper fee would be $2,500.

Our Court of Appeals has also sustained a thirty day suspension for an attorney who pressed his one-third contingency fee when he was discharged before he could provide substantial assistance to the client. *In re Waller,* 524 A.2d 748 (D.C.App.1987). But, in another reciprocal discipline case, our jurisdiction has upheld a suspension for six month for an attorney who charged an excessive fee, refused to return the fee after discharge and engaged in misrepresentation. *In re Leventhal,* S–49–77/R–12–77 (D.C.App.1977).

In a more serious case, the District of Columbia Court of Appeals has disbarred an attorney who took money from an estate without court authorization when it was later determined that the checks cashed were higher than the amount of compensation which the court would have approved. *In re Newsome,* D–34–89 (D.C.App.1979) (en banc). There, unlike here, the Court also found misappropriation.

These cases lead this Board to determine that the sanctions levied by the Supreme Court of Florida for the disciplinary violations are within the range of sanctions previously ordered by the District of Columbia Court of Appeals and would not impose a grave injustice in view of the cases in our jurisdiction.

D. The misconduct established warrants substantially different discipline in the District of Columbia. As we have indicated previously, the discipline ordered by the Supreme Court of Florida is within the range imposed in other cases from the District of Columbia. Yet, we will recommend to the District of Columbia Court of Appeals reciprocal discipline which is substantially different from that imposed by Florida. *In re Reid,* 540 A.2d 754, 758 (D.C.App.1988); D.C.Bar Rule XI § 11(g).

E. The misconduct elsewhere does not constitute misconduct in the District of Co-

---

4. For example, the original April 19, 1990 opinion by the Supreme Court of Florida ordered Respondent to pay the Jones couple $15,670 plus interest as excess fees in connection with the probate of the Estate of Leula King. After Respondent filed supplemental pleadings, the Supreme Court of Florida revised this sum to $15,470 plus interest in the February 14, 1991 Revised Opinion. Additionally, the first Supreme Court opinion called for Respondent to repay the Jones couple $1,000.93 as excess charges for the will preparation and $973.97 as excess charges for general services. This component was completely eliminated, again after supplemental pleadings from Respondent, by the Supreme Court of Florida in the Revised Opinion of February 14, 1991.

lumbia. The District had in effect an identical DR 2–106 at the time of Respondent's actions. The collection of an excessive fee was barred in the District of Columbia at the identical time Respondent was disciplined in Florida. *See, In re Hudock, supra,* 544 A.2d at 710.

Nevertheless, we have said that we are recommending to the District of Columbia Court of Appeals discipline in our jurisdiction which is substantially different from that imposed in Florida. *In re Reid, supra.* This Board has determined that the procedures in Florida comported with due process, there was no infirmity in the proof establishing the misconduct and that there are no other reasons for a hearing *de novo* for Respondent. We are, thus, able to recommend to the District of Columbia Court of Appeals different discipline than that imposed by Florida. *Id.* at 758.

The Supreme Court of Florida ordered Respondent suspended for ninety-one days. We agree that this component of the discipline is an appropriate sanction for the misconduct here. We do not agree with the State of Florida that Respondent should undergo a two-year probationary period. Generally, this Board imposes probation to remedy a practice or health-related problem which this Board feels needs monitoring. We have not seen, in this record, any aspects of Respondent's behavior which seem to call for monitoring. Moreover, we are not inclined to impose payment of the financial aspects of the Florida discipline as a precondition to Respondent's reinstatement after his period of suspension in our jurisdiction.

In order to determine if the suspension this Board recommends should be imposed prospectively or as of the May 21, 1990 date set by the opinion of the Supreme Court of Florida, Respondent was asked to advise this Board if he had practiced in the District since his suspension in Florida. *In re Goldberg,* 460 A.2d 982 (D.C.App.1983). In a document styled: *Verified Statement of T. Carlton Richardson Re[:] Intention to Practice Law,* filed January 2, 1991 with the Board, we were notified by Respondent that he continued to practice in the District of Columbia and he intended to do so unless the District of Columbia Court of Appeals took action in relation to his license.[5] Therefore, we will recommend that the suspension be imposed prospectively.

In sum, we recommend to the District of Columbia Court of Appeals that T. Carlton Richardson be disciplined by being suspended for a period of ninety-one days for a violation of DR 2–106 in the State of Florida effective June 24, 1991, the date of Respondent's suspension by Order from the District of Columbia Court of Appeals. *See, supra,* n. 5.

BOARD ON PROFESSIONAL RESPONSIBILITY

By:  Francis D. Carter
     Francis D. Carter

Date:  July 26, 1991

All members of the Board concur in the foregoing Report and Recommendation.

5.  By Order filed June 24, 1991, the District of Columbia Court of Appeals suspended Respondent from the practice of law in this jurisdiction pending the final outcome of this proceeding. D.C.Bar Rule XI § 11(d).