**In re James W. ROBERTSON, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 91–SP–1516.**

District of Columbia Court of Appeals.

Submitted Oct. 9, 1992.

Decided Jan. 15, 1993.

---

Leonard H. Becker, Bar Counsel, and Michael S. Frisch, Asst. Bar Counsel, were on the brief for petitioner, the Office of Bar Counsel.

James W. Robertson, respondent pro se.

Before TERRY and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Respondent, James W. Robertson, is a member of the bar of this court. In June 1991 a three-judge panel of the United States District Court for the District of Columbia unanimously ruled that on December 11, 1989, Robertson had violated this court's Disciplinary Rule ("DR") 1–102(A)(4).[1] After the filing of further pleadings, the same panel suspended for six months Robertson's privilege of applying for admission to the bar of the United States District Court or for permission to appear in that court *pro hac vice*. On April 22, 1992, after receiving a certified copy of the District Court's order, this court suspended Robertson from the practice of law in the District of Columbia and ordered him to show cause before the Board of Professional Responsibility ("the Board") why the identical disciplinary sanction should not be imposed.[2]

Robertson argued to the Board that because he was "subjected to a hearing [by the District Court] which was substantially lacking in meaningful due process," a *de novo* hearing was necessary. On the issue of sanctions, Robertson argued that "a more appropriate proportional equivalent would be public reprimand [or] ... some form of community service, such as being required to handle a number of cases pro bono, or teaching a series of professional responsibility seminars for the bar." The Board concluded that there was no need for a *de novo* hearing and recommended a thirty-day suspension *nunc pro tunc* as of April 22, 1992, the date of this court's temporary suspension order. We agree with the Board's decision not to hold a *de novo* hearing, but we reject its recommendation of a thirty-day suspension and impose instead a six-month suspension, which Bar Counsel originally sought before the Board, and which we deem to be the closest possible sanction to that imposed by the District Court.

I

Robertson, who is not a member of the District Court bar, appeared *pro hac vice* in that court to represent the principal defendant, Rayful Edmond, III, in a highly publicized criminal trial. Before and during the trial, the United States Marshals' Service maintained very strict security in and around the United States Court House, and Edmond himself was housed at a secret location several miles away, not at the District of Columbia Jail. After the trial began, the trial judge relaxed to some ex-

---

1. The *Disciplinary Rules* were part of this court's former Code of Professional Responsibility, which was in effect at the time of Robertson's misconduct. DR 1–102(A)(4) provided that a lawyer "shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The same prohibition currently appears in Rule 8.4(c) of the new Rules of Professional Conduct, which supplanted the former Code on January 1, 1991.

Under Rule 706(a) of the Rules of the United States District Court for the District of Columbia, violations of the Code of Professional Responsibility and Rules of Professional Conduct "shall be grounds for discipline" by that court.

2. D.C. Bar Rule XI, § 11(d) provides in part:

Upon receipt of a certified copy of an order demonstrating that an attorney subject to the disciplinary jurisdiction of this court has been suspended or disbarred by ... another court in the District of Columbia, the court shall forthwith enter an order suspending the attorney from the practice of law in the District of Columbia pending final disposition of any reciprocal disciplinary proceeding, and directing the attorney to show cause within thirty days from the date of the order why the identical discipline should not be imposed.

tent the security surrounding Edmond so that family members might visit him in the courthouse cellblock. Soon thereafter, however, the Marshals' Service concluded that these visits were disruptive, terminated the privilege of visits from family members, and informed the trial judge that visitation must be limited to attorneys and court personnel. Although there was no written order to this effect, Deputy Marshal Floyd Johnson told Robertson that only attorneys and court officials would thenceforth be admitted to the cellblock to see Mr. Edmond.

After Edmond was found guilty on several charges, Mr. Robertson told Elsa Walsh, a Washington Post reporter who had asked him several times during trial for permission to interview his client, that she could now speak with Edmond while he was in the cellblock. Mr. Edmond had previously requested that Robertson be present during his pre-sentence interview with a probation officer, and it was to this meeting on December 11 that Robertson invited Ms. Walsh. At the entrance to the cellblock, as a Deputy Marshal looked on, Robertson signed the log book for himself, Ms. Walsh, and the probation officer, Gregory Hunt. He wrote his own name and both of their names in the book, and next to Ms. Walsh's name he wrote the abbreviation "Atty."

After Mr. Hunt had completed his interview[3] and left the cellblock, Ms. Walsh began her questioning of Mr. Edmond. When she finished, she left the cellblock and went over to the log book to sign herself out. When she did so, she noticed for the first time that Mr. Robertson had put the designation "Atty" next to her name. She scratched it out and entered "Reporter Wash. Post" in its place. Moments later, after Mr. Robertson came out of the cellblock, Ms. Walsh asked him why he had signed her in as "Atty." He replied that it must have been "a mistake." The next day Ms. Walsh contacted the Marshal's Office to explain and apologize for the error. In her article based on the inter-

view with Edmond, she wrote the following:

A reporter interviewed Edmond with Robertson's permission, and after the interviewer [had] identified herself to Edmond as a Washington Post reporter.

After the interview, the reporter noticed that Robertson, who signed her into the cellblock's logbook, had not identified her as a reporter in the logbook. When the reporter noticed that as she was leaving the area, the reporter corrected it and notified the U.S. Marshal's Office of the error.

The District Court panel of judges found as a fact, by clear and convincing evidence, that Robertson had "misled [the probation officer and the Deputy Marshals] into believing that Walsh was an attorney or his assistant entitled to admission to the cellblock for the purpose of representing Edmond during the Probation Officer's interview and deliberately concealed from them the fact that she was a newspaper reporter." Although the panel found that the Deputy Marshals at the cellblock did not rely on Robertson's false entry in the log book in admitting Ms. Walsh, it also ruled that this entry was "further evidence" of his deliberate failure to identify Ms. Walsh as a reporter "when [he] well knew that if he identified her correctly, she would be refused admission." The panel of judges concluded that Robertson's "misrepresentation of Walsh as an attorney or his legal assistant and [his] dishonest concealment of the fact that she was a newspaper reporter" violated DR 1–102(A)(4).

## II

The choice of sanctions in a reciprocal discipline case is governed by Rule XI, § 11(c), of this court's Rules Governing the Bar. That rule states in pertinent part:

Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:

---

3. In the course of this interview, Edmond made a reference to "the reporter." Mr. Hunt thought this was strange, but, since he did not under-

stand the remark or connect it with Ms. Walsh, he ignored it.

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or ...

(3) The imposition of the same discipline by the court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia....

Unless there is a finding by the Board under (1) ... above that is accepted by the court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this court.

This rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (citation and footnote omitted). The purpose of the presumption is to avoid "an inconsistent disposition involving identical conduct by the same attorney." *In re Velasquez*, 507 A.2d 145, 147 (D.C.1986). The desirability of avoiding such inconsistent dispositions is especially important when, as in this case, the original disciplining court was another court within the District of Columbia.[4] With these principles in mind, we turn to Robertson's specific contentions.

### A. *De Novo Hearing*

■ Robertson argues that the procedure followed by the District Court judges in reaching their conclusion was improper and that, under Rule XI, § 11(c)(1), a *de novo* hearing is necessary to determine in the first instance whether there was a violation of DR 1–102(A)(4). He asserts that counsel for the court's Grievance Committee produced a surprise witness—Deputy Marshal Johnson—in violation of an informal discovery agreement between the

Grievance Committee and Robertson, and that this surprise testimony prejudiced him because he was unable to interview Johnson before the hearing. Robertson in fact filed a motion in the District Court for a new hearing on this ground, but his motion was denied by the panel of judges, who said that Johnson's testimony, although "probative and helpful," was "cumulative, there being ample other highly probative evidence to sustain the ruling of the Panel." The judges also found "no showing" that Robertson's inability to engage in discovery prior to Johnson's testimony caused him any disadvantage, nor was the effectiveness of his counsel's cross-examination of Johnson "in any way diminished" by the Committee's failure to give notice of its intention to call Johnson. The judges noted, in addition, that they had found Robertson's assertion that he did not know it was improper to introduce a reporter into the cellblock during a period of intense security "inherently incredible."

We agree with the Board that there is no evidence at all in the record, let alone "clear and convincing evidence" as required by Rule XI, § 11(c), that the procedure followed by the District Court was in any way deficient. We note in addition that Robertson's arguments on this point were raised in and rejected by the District Court, to whose decision we must give "due deference" under principles of collateral estoppel. *See In re Richardson*, 602 A.2d 179, 181 (D.C.1992). For these reasons, we reject Robertson's due process argument and, concomitantly, his request for a *de novo* hearing.

### B. *Sanction*

■ In a reciprocal proceeding, Rule XI, § 11(f) requires us to impose "the identical discipline" imposed by the original disciplining court unless the attorney demonstrates (or this court finds) by clear and convincing evidence that such a sanction is unwarranted for one or more of the reasons spelled out in Rule XI, § 11(c). In

---

**4.** D.C. Bar Rule XI, § 11(a), defines "disciplining court" to include any court of the United States, which of course includes the United

States District Court for the District of Columbia.

some cases the original sanction is not one of those available under our rules,[5] but even in those instances we are not precluded from imposing the identical discipline so long as the original sanction is "functionally equivalent to one that we might have imposed had the case arisen before us in the first instance." *In re Coury*, 526 A.2d 25, 25 (D.C.1987). Thus, for example, in *In re Chadwick*, 585 A.2d 798, *amended*, 591 A.2d 837 (D.C.1991), a reciprocal case from California, we adopted the California sanctions and suspended an attorney for five years, stayed four years of that suspension, and placed the attorney on five years' probation. Even though neither a five-year suspension nor a five-year period of probation would otherwise be available under our rules, we agreed with the Board that these sanctions were "of the same kind and of the same nature" as any sanction that might have been imposed originally in the District of Columbia. *Id.* at 801. Similarly, in *In re Coury, supra,* we suspended an attorney for seven years, to run concurrently with his Virginia suspension, although a seven-year suspension would not have been possible as a sanction originally imposed by this court. We specifically noted in *Coury* that we were guided in our decision by the desire to avoid "an inconsistent disposition involving identical conduct by the same attorney." *In re Velasquez, supra,* 507 A.2d at 147, cited in *Coury,* 526 A.2d at 25.

In this case it is impossible for us to impose exactly the same sanction that was imposed by the District Court, but not for the same reason as in *Chadwick* and *Coury.* The District Court suspended for six months Mr. Robertson's privilege to apply for admission to its bar or for permission to appear *pro hac vice.* But we cannot impose the identical sanction—in the Board's words, it would be "no sanction at all"—because Robertson is already a member of our bar. Bar Counsel also recognized this and argued before the Board that the appropriate sanction here would be a six-month suspension from the practice of law in the courts of the District of Columbia. For two independent and alternative reasons, we agree.

First, if we were to treat the original sanction as a suspension for six months from the practice of law before the District Court, which it is *de facto* if not *de jure,* we would then apply the presumption of identical discipline and impose a six-month suspension without extended discussion. *See In re Zilberberg, supra.* Robertson apparently assumes that we would do this, for he maintains that imposition of the same discipline by this court would result in a "grave injustice," in violation of Rule XI, § 11(c)(3). The Board construes this argument as one based not on subsection (3), but on subsection (4) of the same rule, *i.e.,* as a claim that his misconduct "warrants substantially different discipline" in this proceeding. We think the Board is correct in so interpreting Robertson's argument, for his claims do focus on the notion that a six-month suspension, as recommended by Bar Counsel, is "not proportional to the punishments other tribunals have meted out." [6] We disagree, however, with

---

5. D.C. Bar Rule XI, § 3(a) lists seven possible sanctions for a disciplinary violation:
   (1) Disbarment by the court;
   (2) Suspension by the court for an appropriate fixed period of time not to exceed three years ...;
   (3) Censure by the court;
   (4) Reprimand by the Board;
   (5) Informal admonition by Bar Counsel;
   (6) Revocation or suspension of a license to practice as a Special Legal Consultant; or
   (7) Probation ... for not more than three years.

6. Robertson does put forth one untenable argument in support of his claim of "grave injustice." He asserts that because he tries more

cases in the local District of Columbia courts than in the federal courts, it would be a "grave injustice" to impose reciprocal punishment here. This contention is utterly without merit. The sanctions that this court imposes in disciplinary cases serve not only to maintain the integrity of the legal profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar conduct. *See In re Reback,* 513 A.2d 226, 231 (D.C.1986) (en banc). We reject any suggestion that the more cases an attorney may have pending in our court system, the more lenient we should be in dealing with the misconduct of that attorney. We find not a scintilla of support for Robertson's characterization of a six-month suspension as a grave injustice. *See In re Gilbert,* 538 A.2d

the Board's conclusion that a six-month suspension is outside the range of sanctions imposed for similar conduct in other cases, and thus we reject its recommendation that Robertson be suspended for only thirty days.

In deciding whether to apply the "substantially different discipline" exception to the reciprocal discipline rule,

[this] court must: (1) "determine whether the misconduct in question would have resulted in the same punishment here as it did in the disciplining jurisdiction," or if the discipline of the foreign jurisdiction is "within the *range* of sanctions" that would be imposed in this jurisdiction for the same misconduct; and (2) if "the discipline imposed in this jurisdiction would be different from that of the disciplining court, [this court] must determine whether the difference is *substantial.*"

*In re Bradbury,* 608 A.2d 1218, 1219 n. 1 (D.C.1992) (emphasis added), quoting *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990); *see In re Coury, supra,* 526 A.2d at 26 ("substantially different discipline" exception may be invoked "where the foreign sanction, whatever its form, is effectively either significantly heavier or lighter than that which we would impose for the same misconduct"). We are satisfied that a six-month suspension for violating DR 1–102(A)(4) is within the appropriate "range" of sanctions. *See In re Hirschberg,* 565 A.2d 610, 611–612 (D.C.1989) (in reciprocal case involving fraud and dishonesty, court imposed public reprimand and one-year suspension, but stayed the suspension and placed attorney on two years' probation): *In re Hutchinson,* 534 A.2d 919, 924 (D.C. 1987) (en banc) (for conduct involving dishonesty and misrepresentation, along with two other violations, court imposed one-year suspension).

Second, even if we were to treat this case as an original proceeding because we can-

not impose the identical sanction imposed by the District Court, or anything like it,[7] we would have to take into account any aggravating or mitigating circumstances in choosing a sanction of our own. *E.g., In re Haupt,* 422 A.2d 768, 771 (D.C.1980). The Board's report is silent as to any mitigating factors, but it recognizes that Robertson's prior disciplinary record is an aggravating factor which "does play a part" in the determination of a sanction. Robertson has a history of disciplinary violations, including two informal admonitions by Bar Counsel and a public censure by this court. *In re Robertson,* 608 A.2d 756 (D.C.1992). Bar Counsel argued before the Board that "[i]n light of [this] prior misconduct, a six-month suspension is appropriate."[8] Additionally, the District Court panel of judges found Robertson's testimony "inherently incredible," a finding which we deem significant. *See In re Hutchinson, supra,* 534 A.2d at 925. We note also that, although the panel of judges found it unnecessary to decide whether Robertson's conduct also violated DR 1–102(A)(5), which proscribes conduct prejudicial to the administration of justice, one member of the panel wrote a separate concurring opinion to express his view that Robertson had violated that rule as well as DR 1–102(A)(4).

The Board acknowledges, as it must, that the seriousness of the misconduct "is a factor to be considered" in deciding on a sanction, citing *In re Knox,* 441 A.2d 265, 268 (D.C.1982). We view with the utmost seriousness Mr. Robertson's deliberate and intentional breach of courthouse security. As the Board recognizes, "the integrity of the cellblock is vital to the overall operation of the courthouse." This is particularly true in a case as sensitive and notorious as the *Edmond* case, in which more than twenty defendants were charged with crimes ranging from conspiracy to distribute drugs to first-degree murder while armed. Mr. Robertson's smug-

---

742, 746 (D.C.), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 56 (1988); *In re Evans,* 533 A.2d 243, 244 (D.C.1987).

**7.** A strong argument can be made, however, that a six-month suspension by this court is the

"functional equivalent," *In re Coury, supra,* of the sanction imposed by the District Court.

**8.** In this court, however, Bar Counsel supports the Board's recommendation of a thirty-day suspension.

gling of a newspaper reporter into the cell-block in these circumstances was utterly inexcusable and should be unthinkable.[9]

The Board, in recommending a thirty-day suspension, relies on cases in which this court imposed sanctions ranging from a three-month suspension to a public reprimand. In one such case, *In re Sandground*, 542 A.2d 1242, 1247–1248 (D.C. 1988), we held that a three-month suspension was warranted when an attorney was found to have knowingly assisted his client in the concealment of assets in a pending divorce action, given the attorney's unblemished record over thirty years of practice and his excellent reputation. In another case, *In re Rosen*, 481 A.2d 451, 455 (D.C. 1984), the attorney received a thirty-day suspension for making false statements in three sets of motion papers filed with the trial court. We do not accept the Board's premise that these cases are comparable to the case at bar. While we cannot condone the concealment of a client's assets or the filing of false documents with the court, we think that what Mr. Robertson did here was far more serious, and potentially far more harmful. The gross breach of courthouse security that Robertson deliberately committed calls for a substantially longer suspension than we imposed in either *Sandground* or *Rosen*.[10] We run no risk here of "foster[ing] a tendency toward inconsistent dispositions for comparable conduct," D.C. Bar Rule XI, § 9(g), because, as far as we are aware, there is no prior instance of comparable conduct in any District of Columbia disciplinary proceeding to date. What Mr. Robertson did here is different in kind, not just in degree, from what the attorneys did in *Sandground*, *Rosen*, and similar cases.

For these reasons—the six-month suspension by the District Court, the presumption favoring identical discipline (or its functional equivalent) if at all possible, Mr. Robertson's past record of disciplinary violations, and above all the gravity of his misconduct—we conclude that a suspension for six months is appropriate in this case.

### III

Ordinarily we would make Mr. Robertson's suspension run *nunc pro tunc* from April 22, 1982, the date of his initial temporary suspension under Rule XI, § 11(d). In this case, however, Mr. Robertson has not filed with the court and the Board the affidavit required by Rule XI, § 14(f). That rule provides that within ten days after the effective date of an order of suspension, the suspended attorney must file an affidavit "[d]emonstrating with particularity, and with supporting proof," that he or she has (among other things) notified all clients and opposing litigants of the suspension. *See* Rule XI, § 14(a)–(c). Although Mr. Robertson was temporarily suspended last April, he has not yet filed such an affidavit. To ensure that the rule is complied with, therefore, we shall direct that his six-month suspension run from the date of its filing. *See* Rule XI, § 16(c) ("a suspended attorney shall not be eligible for reinstatement until a period of time equal to the period of suspension shall have elapsed following the attorney's compliance with section 14").

It is therefore ORDERED that respondent, James W. Robertson, shall be and hereby is suspended from the practice of law in the District of Columbia for a period of six months. The six months shall begin to run from the date on which respondent files an affidavit with this court and the Board on Professional Responsibility in accordance with D.C. Bar Rule XI, § 14(f). That affidavit shall be filed within ten days from the date of this opinion.

SCHWELB, Associate Judge, dissenting:

The Board on Professional Responsibility, which has specialized expertise in these matters, has recommended that we sus-

---

9. We assign no blame to the reporter herself, however. At the critical moment she had no knowledge of what Mr. Robertson had done, and when she eventually found out, she did all that she could to rectify matters.

10. We note also that in *Sandground* the attorney had no prior disciplinary record, whereas Mr. Robertson has had three previous encounters with our disciplinary system.

pend Robertson for thirty days. Bar Counsel now agrees.

D.C. Bar Rule XI, § 9(g) requires this court to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." In my opinion, the Board's recommended disposition is reasonably consistent with our precedents.[1] I would therefore adopt it.

I think we should also take into consideration the fact that Robertson has already been temporarily suspended since April of last year. Under the majority's disposition, Robertson receives no credit for "time served," but his suspension is nevertheless for a much longer period than the thirty days recommended by the Board. I do believe, however, that the shorter suspension which the Board has suggested and which I would impose should begin after Robertson has filed an affidavit in conformity with D.C. Bar Rule XI, § 14(f).

Accordingly, although I agree with the majority that no *de novo* hearing is necessary, I respectfully dissent from the order suspending Robertson prospectively for six months.

---

1. Although this is in a sense a reciprocal discipline case, I do not think that the suspension of a lawyer for six months from practicing law in a jurisdiction in which he is a member of the bar is "identical discipline," *see* D.C. Bar Rule XI, § 11(f), to an order precluding him from applying for admission to a bar of which he is not a member. Robertson's livelihood is far more severely affected by our suspension of him than by the action of the United States District Court.