In re Jac Edward KNUST, Respondent.

No. 90–1534.

District of Columbia Court of Appeals.

Submitted Sept. 16, 1991.
Decided Oct. 29, 1991.

---

Before FERREN and WAGNER, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

Jac Edward Knust, a member of the bars of Maryland and the District of Columbia, was suspended from the practice of law in Maryland on September 12, 1990, effective October 12, 1990, after the Court of Ap-

---

peals of Maryland found that he had violated DR 2–106(A) (charging an excessive fee); DR 5–107(A)(1) (accepting compensation for his legal services from persons other than the client); and DR 7–101(A)(1) and (3) (failing to represent his client zealously). The Report and Recommendation of the Board of Professional Responsibility (the Board) is before us in which it recommends the imposition of reciprocal discipline pursuant to D.C.Bar R. XI, § 11 (1990), *nunc pro tunc.* Respondent does not object to the proposed action.

We agree generally with the Board's analysis and recommendation as set forth in its report, which appears as an appendix. The applicable Bar rule provides for identical discipline unless one of five factors is demonstrated.[1] D.C.Bar R. XI, § 11(c). Only one of those five factors is pertinent to our consideration of this case. Identical discipline will not be imposed when "[t]he misconduct established warrants substantially different discipline in the District of Columbia." D.C.Bar R. XI, § 11(c)(4). While this jurisdiction might have imposed a more severe sanction, it would not have been substantially different. As the Board points out, the sanction imposed is sufficiently within the range which this jurisdiction might have imposed to warrant identical discipline. *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990) (citing *In re Hirschberg,* 565 A.2d 610, 614 (D.C.1989)). We defer to the Board's determination on the issue. *See id.* at 1357.

The Board cites cases supporting its conclusion that a six-month suspension is within the range of sanctions which might have been imposed in this case. Other reported cases also support the Board's position. *See, e.g., In re Delate,* 579 A.2d 1177 (D.C.1990) (six month suspension imposed for failure to deliver files and assets to client, two instances of conduct prejudicial to the administration of justice, two instances of neglect of legal matter, and fail-

ure to seek client's lawful objectives); *see also In re Whitlock,* 441 A.2d 989 (D.C.1982) (neglect of legal matters, failure to seek lawful objectives of clients, and failure to comply with court order to respond to inquiries of Bar Counsel warranted a six month suspension). Therefore, we accept the Board's recommendation for a six month suspension.

Respondent filed an affidavit that he has not practiced law in the District of Columbia after midnight, October 11, 1990. Under the circumstances, we concluded that reciprocal discipline should be imposed *nunc pro tunc* to October 12, 1990.[2] See *In re Chadwick,* 585 A.2d 798, 799 (D.C.1991) (citing *In re Goldberg,* 460 A.2d 982 (D.C.1983)).

Accordingly, it is ORDERED that respondent, Jac Edward Knust, is suspended from the practice of law in the District of Columbia for six months, commencing *nunc pro tunc* on October 12, 1990.

*So Ordered.*

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket No. 414–90

In the Matter of:

JAC EDWARD KNUST, ESQ.

RESPONDENT.

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

#### I. INTRODUCTION

On September 12, 1990, the Court of Appeals of Maryland found that Respondent had violated DR 2–106(A) (charging an excessive fee); DR 5–107(A) (accepting compensation for his legal services from persons other than the client); and DR 7–101(A)(1) and (3) (failing to represent a

---

1. The factors are listed under the Board's Conclusions and Recommendations in the appendix.

2. The Board recommended that the sanction commence on September 12, 1990, the date of

filing of the suspension order by the Court of Appeals of Maryland. However, the suspension did not begin until thirty days from the filing of the court's opinion.

client zealously). The Court determined that the appropriate sanction was a six-month suspension from the practice of law, and on September 12, 1990, this sanction was imposed.

On January 22, 1991, Bar Counsel filed a motion in the District of Columbia Court of Appeals recommending that reciprocal discipline be imposed. In light of Respondent's statement that he did not have an active practice in this jurisdiction and that he would not practice law in this jurisdiction during his suspension from the practice of law in the State of Maryland (December 27, 1990 letter from Respondent to Board), Bar Counsel did not object to the sanction being imposed *nunc pro tunc.*

For the reasons set forth in this Report, the Board concurs with Bar Counsel's recommendation and recommends that reciprocal discipline be imposed, *nunc pro tunc.*

## II. FACTUAL BACKGROUND

Although Respondent's is the only case before us, the events that brought him to this stage demonstrate a pattern of conduct that does little credit to any of the lawyers involved. Respondent's problems arise from his representation of Frank Getson. In 1979, Getson was employed by an importer of foreign motor vehicles in the port of Baltimore. During his employment, he was involved in a collision with a car driven by his co-employee, Rose Robinette, while both were driving vehicles for their employer. Getson has consistently maintained that the collision was Robinette's fault.

As a result of the accident, the employer's worker's compensation carrier, Hartford Accident & Indemnity Company, paid Robinette $52,588.85 in worker's compensation. Robinette, represented by William J. Blondell, Jr., then sued Getson for personal injuries sustained during the accident. According to Article 101, Section 58 of the Maryland Code (1957, 1985 Repl.Vol.), a worker is required to reimburse an insurer for compensation paid to the worker out of any recovery the worker receives in a third-party action. As a result, Hartford was entitled to a "lien" on any recovery Robinette received from Getson. Hartford did not employ its own counsel to protect its subrogation interest in the action against Getson.

Getson retained William Littleton to represent him in the lawsuit Robinette brought against him. At a hearing that Getson attended unrepresented, a default judgment was entered against him in the amount of $73,000.

Getson then hired Joseph B. Harlan and Respondent to represent him in a legal malpractice suit against Littleton. Respondent and Harlan practiced in partnership at the time of this engagement and remained partners until January 1, 1985. Harlan and Respondent agreed to take the case in return for a contingent fee of fifty percent, calculated against the gross recovery. Harlan obtained from Hartford a report of an investigation Hartford conducted of the Robinette–Getson accident. Although Harlan and Respondent were subsequently to enter into a written stipulation that "Hartford's investigative report was crucial to the success of Mr. Getson's claims against Mr. Littleton," the record does not disclose how the report was crucial, and the Maryland court apparently rejected this claim.

In 1984, a representative of Hartford, Sandy Kelly, learned that Respondent was representing Getson. Kelly telephoned Respondent and authorized Harlan and Respondent to represent Hartford's interests in exchange for a fee. Hartford's interest was that if Getson recovered from Littleton, he would then have funds to pay the judgment entered against him on behalf of Robinette, over which Hartford had a "lien." Respondent replied that he would have to discuss the offer with Harlan. Respondent sent Harlan a memorandum outlining the conversation with Kelly. Harlan and Respondent did not accept the proposal at that time and did not discuss the proposal again with Hartford until after Getson's action against Littleton produced a recovery.

Getson's suit against Littleton was victorious, resulting in a recovery of $150,000. There was no appeal. Harlan and Respon-

dent anticipated that Blondell, as counsel for Robinette, would attempt to garnish Getson's recovery. In a demonstration of priorities which foreshadowed events to follow, they enlisted an associate at their firm to research whether a garnishment would be limited to the net recovery after their fee had been paid. Surprisingly, Robinette never attempted to garnish the recovery.

On January 15, 1986, Harlan and Respondent made a distribution to Getson of his recovery. They informed Getson that Robinette would probably attempt to recover her outstanding judgment out of Getson's recovery. Getson adamantly refused to permit any portion of the recovery to be disbursed to Robinette because he insisted she was responsible for the accident. Getson did authorize Harlan and Respondent to pay to Hartford $52,588.85, which was the full amount of the worker's compensation "lien." The record is silent so we can only speculate as to how Getson was persuaded to be so generous to Hartford. The settlement sheet stated that the reason for the payment was to compensate Hartford "for the assistance and appearance during trial of [Hartford's] agents and employees which acts of cooperation were necessary to the successful prosecution of [Getson's] case against Mr. Littleton." The accuracy of this statement is questionable, as the Maryland Court of Appeals found.

Unbeknownst to Getson, Harlan and Respondent then approached Hartford with a deal. On January 20, 1986, Harlan wrote to a Mr. Rich at Hartford and offered to give Hartford two-thirds of the amount against which Hartford had a lien ($35,-059.23) and suggested that Harlan and Respondent be paid one-third (approximately $17,000) as a "fee." The first paragraph of the letter included the following: "Pursuant to the agreement made between Jac Knust, formerly of our office...." Harlan acknowledged that the reference to an agreement related to the telephone contact by Hartford in 1984. He stated that his characterization of the legal relationship was mistaken because Harlan and Respondent never accepted Hartford's offer of employment.

Hartford agreed to the payment scheme, and Harlan and Respondent pocketed the $17,000. They did not deem it necessary to trouble their client with this information. Respondent justified his actions by stating that he and Harlan "were thinking it was our effort that produced the results here ..." and that the "fee" "wouldn't have made any difference to [Getson] one way or the other." The careful reader will note that from a recovery of $150,000, Harlan and Respondent had now received their 50 percent of gross recovery contingency fee or $75,000 plus $17,000 for a total of $92,-000 or 61 percent of the gross recovery. Of the remaining $58,000, $35,000 had gone to Hartford to satisfy its lien against Robinette's judgment against Getson. That left Getson with $23,000 of his $150,000 recovery, or about 15 percent, which amount was presumably further reduced by the expenses of the litigation. There was probably just about enough money for Getson to pay Robinette's outstanding judgment, (assuming she pursued the action, and assuming further that Getson was entitled to a credit against Robinette for the funds allocated to Hartford pursuant to the side deal effected by Respondent) and perhaps to purchase a cup of coffee.

Robinette's attorney, Blondell, or one of his associates, later informed Getson of the deal between Harlan and Respondent and Hartford. Getson then telephoned Respondent, who, according to Getson, told him that the attorneys "knew at the time, but they didn't feel that I should have known about it, whatever." Getson did not institute any disciplinary action against Respondent.

Blondell enforced the Robinette judgment against Getson by garnishing his wages. Respondent came to Getson's rescue by placing him in bankruptcy—for a $750 fee.

From here, the plot thickens. First, Blondell reappeared and attempted to dip into the pot, but, displaying lack of concern for his client worthy of Harlan and Respondent, did so solely to satisfy his personal interests. In his own name, he sued Harlan and Respondent for the part of the

Robinette uncollected judgment that would represent his contingency fee. He sought to recover this from the money paid by Hartford. The case was dismissed on motion.

Next, Blondell apparently remembered his client's interests. Represented by Blondell, Robinette launched an unsuccessful attempt to sue Harlan and Respondent on the theory that she was the third-party beneficiary of the contract between Harlan, Respondent and Getson. The suit resulted in a jury verdict in favor of Harlan and Respondent.

In the end, Harlan and Respondent realized the error of their ways. In the actions brought by or through Blondell, Harlan and Respondent were represented by an associate in Harlan's new law firm. The associate correctly advised Respondent and Harlan that $17,000, paid to them by Hartford as a fee, was Getson's money that should be refunded to him. Harlan and Respondent reluctantly agreed. Harlan stated:

> I had some discussions with other people that were attorneys, as to the philosophy of whether that was correct or not because, the way that it happened, I thought that we were doing the right thing and, retrospectively, I lost the argument. They said, "Hey, just look at it from the other perspective."

Harlan and Respondent tendered the $17,000 to Getson's trustee in bankruptcy, and it was eventually accepted.

Getson never complained to Bar Counsel. Blondell, however, demonstrating the truth of that old adage that Hell hath no fury like a lawyer unpaid, referred the matter to the Maryland Bar Counsel.

## III. CONCLUSION AND RECOMMENDATIONS

In reciprocal discipline cases, the Court should impose the identical discipline unless the attorney-respondent demonstrates by clear and convincing evidence one of five factors. These factors are:

1. The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

2. There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or

3. The imposition of the same discipline by the Court would result in grave injustice; or

4. The misconduct established warrants substantially different discipline in the District of Columbia; or

5. The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C.App.R.XI § 11(c).

In the instant case, Respondent has not attempted to show that any of the five reasons not to impose reciprocal discipline applies to his case. Bar Counsel has recommended that reciprocal discipline be imposed. Before concurring in that recommendation, however, the Board believes that it is necessary to address briefly the question of whether this misconduct would warrant substantially different, *i.e.*, greater, discipline in the District of Columbia. D.C.R.XI, § 11(c)(4). While it is clear that this jurisdiction may have imposed more severe sanctions, a six-month suspension is within the *range* of sanctions that this jurisdiction may have imposed. *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990). *See, In re Vogel*, 382 A.2d 275 (D.C.App.1978) (suspended for nine months for dishonestly taking fee and misrepresenting client); *In re Rosen*, 470 A.2d 292 (D.C.App.1983) (suspended for six months for failing to seek client's interest).

Accordingly, the Board recommends that the Court of Appeals impose reciprocal discipline upon Respondent in the form of a six-month suspension. In light of Respondent's representation that he has not practiced in the District of Columbia during his suspension in Maryland, the Board recommends that the sanction be imposed *nunc pro tunc* to commence on September 12, 1990.

BOARD ON PROFESSIONAL RESPONSIBILITY
By: Hamilton P. Fox, III
       Hamilton P. Fox, III

Date: May 1, 1991

All members of the Board concur in this Report and Recommendation except Mr. Carter who did not participate.