In re T. Carlton RICHARDSON,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 95–BG–639.

District of Columbia Court of Appeals.

Argued Feb. 12, 1997.

Decided April 17, 1997.

---

**20.** We do not reverse the grant of summary judgment to PIW on Morgan's claims based on *re-* *spondeat superior.* See note 7, *supra.*

T. Carlton Richardson, pro se.

Donna M. DeSilva, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before FERREN and REID, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

Respondent T. Carlton Richardson, a member of the District of Columbia Bar, takes exception to the Report and Recommendation of the Board on Professional Responsibility. The Board asks us to suspend Richardson from practice in the District of Columbia for three years as reciprocal discipline for conduct that caused Richardson to resign voluntarily from the Florida Bar in 1992. Richardson argues that his Florida resignation was not "discipline" and, therefore, that the imposition of reciprocal discipline, including his interim suspension without an evidentiary hearing, is inconsistent with D.C.Code § 11–2503(b) (1995 Repl.) and violates his constitutional rights to due process and equal protection of the laws. We conclude that Richardson's Florida resignation while a disciplinary proceeding was pending against him amounted to "discipline," and that this court's imposition of reciprocal discipline under the circumstances will not violate either his statutory or his constitutional rights. We adopt the Board's recommendation and accordingly order Richardson suspended from the practice of law in the District of Columbia for three years, with reinstatement conditioned upon proof of fitness.

## I.

In its report and recommendation, the Board presented the following facts. Be-

tween 1987 and 1992, Richardson served as trustee and attorney for the Jacqueline Overton Trust. The Florida Bar received a complaint that Richardson had taken excessive fees from the trust. While this complaint was pending, Richardson voluntarily filed a petition to resign from the Florida Bar. The Supreme Court of Florida granted Richardson's petition, with leave to seek reinstatement after three years. *See Florida Bar v. Richardson*, Case No. 80,073, 604 So.2d 489 (Fla. Aug. 27, 1992). Pursuant to D.C. Bar R. XI § 11(b), (d), Bar Counsel notified this court with a certified copy of a Supreme Court of Florida Order accepting Richardson's resignation from the bar, and recommended imposition of reciprocal discipline. Richardson excepted, arguing that his resignation was not "discipline" and that this court accordingly could not suspend him, even on an interim basis, without an evidentiary hearing. On June 27, 1995, we ordered Richardson's temporary suspension from the practice of law, without a hearing, pending final disposition of the proceeding; ordered Bar Counsel to inform the Board "of his position regarding reciprocal discipline"; and ordered Richardson to "show cause before the Board ... why identical, greater or lesser discipline should not be imposed in the District of Columbia." Richardson filed several motions pressing constitutional arguments, as well as a defense under D.C.Code § 11–2503(b). The Board ultimately concluded, however, that Richardson's resignation in Florida under threat of the disciplinary proceeding amounted to "discipline"; that Richardson had waived his due process right to an evidentiary hearing on the charges against him by voluntarily resigning from the Florida Bar; and that reciprocal discipline—a three year suspension plus proof of fitness for reinstatement—should be imposed.[1] Richardson filed timely exceptions to the Board's report and recommendation.

## II.

Richardson's principal arguments can be summarized as follows:

1. D.C.Code § 11–2503(b) does not authorize the use of reciprocal discipline based on a disposition (including a hearing) in another jurisdiction, and thus Rule XI § 11 is invalid.

2. In any event, because Richardson's resignation did not result in a finding of misconduct, it was not "discipline" that could serve as a basis for reciprocal discipline under D.C. Bar R. XI § 11.

3. The reciprocal disciplinary proceeding under Rule XI § 11 violates Richardson's rights to due process and equal protection of the laws in three ways: (a) it authorizes an interim suspension without a hearing; (b) it permits imposition of reciprocal discipline upon resignation from the bar of Florida, without a hearing in the District of Columbia on whether Richardson, knowingly and voluntarily, not only waived his right to a Florida hearing on the charged misconduct but also, in the absence of a Florida hearing, waived his right to a District of Columbia hearing on that conduct; and (c) it shifted to Richardson the burden of persuading the Board and the court that reciprocal discipline should not be imposed.

## III.

Richardson contends that D.C.Code § 11–2503(b) denies this court authority to impose reciprocal discipline; he says it requires the very same process for all attorneys charged with misconduct, regardless of where the alleged misconduct occurred—unless the attorney is subject to discipline under § 11–2503(a) for conviction of "an offense involving moral turpitude." Richardson cites *In re Colson*, 412 A.2d 1160, 1164 (D.C.1979) (en banc), for the proposition that the mandatory language of § 11–2503 precludes adoption of the reciprocal discipline rule, D.C. Bar R. XI § 11.

D.C.Code § 11–2503(b) provides:

Except as provided in subsection (a), a member of the bar may not be censured,

---

1. The Board noted that Richardson had filed a motion to dismiss, challenging the constitutionality of reciprocal discipline under D.C. Bar R. XI § 11, and that Bar Counsel had supplied "a well-articulated defense of constitutionality of the rule

and its consistency with D.C.Code § 11–2503(b)." The Board denied the motion to dismiss, summarily concluding that it "regards this issue as well-settled and concurs with Bar Counsel's sound analysis."

suspended, or expelled under this chapter until [1] written charges, under oath, against that member have been presented to the court, stating distinctly the grounds of complaint. [2] The court may order charges to be filed in the office of the clerk of the court and shall fix a time for hearing thereon. [3] Thereupon a certified copy of the charges and order shall be served upon the member personally, or if it is established to the satisfaction of the court that personal service cannot be had, a certified copy of the charges and order shall be served upon that member by mail, publication, or otherwise as the court directs. [4] After the filing of the written charges, the court may suspend the person charged from practice at its bar pending the hearing thereof.

Nothing in our rules governing reciprocal discipline is at all inconsistent with the procedural requirements of this statutory provision. Under D.C.Bar. R. XI § 11(b), Bar Counsel notifies the Board and this court with a certified copy of a disciplinary order from another jurisdiction against a member of our bar. This meets the first statutory requirement: that Bar Counsel file "written charges under oath." *See* D.C. Bar R. XI § 8(c); *In re Morrell,* 684 A.2d 361, 366–67 (D.C.1996) (holding that statutory language is met when Bar Counsel has reason to believe truth of charges and they are specific enough to notify attorney of challenged conduct).

The statute's second requirement calls for a "hearing" which, as a constitutional matter, means an opportunity to be heard before deprivation of a significant property interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Absent further statutory explanation, therefore, § 11–2503(b) mandates a hearing established by the rules of this court, consistent with constitutional requirements. *See* D.C.Code § 11–2501(a) (providing that "District of Columbia Court of Appeals shall make such rules as it deems proper respecting … censure, suspension, and expulsion" of bar members). D.C. Bar R. XI § 11 assures that an evidentiary hearing on the alleged misconduct will take place (absent waiver) in the jurisdiction where that

conduct occurred, and that the respondent attorney will have an opportunity to be heard at a District of Columbia proceeding on whether the evidentiary hearing comported with due process. *See id.* § 11(c). The reciprocal discipline rule therefore meets the hearing requirement of D.C.Code § 11–2503(b).

The statute next requires service of the charges upon the attorney, as the reciprocal disciplinary rule itself, Rule XI § 11(d), requires.

Finally, the statute expressly permits this court to "suspend the person charged from practice at [the] bar pending the hearing," D.C.Code § 11–2503(b)—clear authority for a temporary suspension under D.C. Bar R. XI § 11(d) pending final disposition of the reciprocal disciplinary proceeding. Such authority does not violate the Due Process Clause. *See Barry v. Barchi,* 443 U.S. 55, 64–65, 99 S.Ct. 2642, 2649–50, 61 L.Ed.2d 365 (1979) (holding that state was "entitled to impose an interim suspension pending a prompt judicial or administrative hearing" where important state interest was at risk).

■ Nothing in the statute prohibits our establishing by court rule, *see* D.C.Code Bar R. XI § 11, a separate reciprocal disciplinary proceeding for attorneys found guilty of misconduct in another jurisdiction, provided, of course, that the reciprocal procedure satisfies the Constitution. Nor does the statute require all attorneys, other than those covered in § 11–2503(a), to go through the same disciplinary process in this jurisdiction, without regard to where the alleged misconduct occurred. Nothing in our reciprocal disciplinary procedures, therefore, violates § 11–2503(b).

## IV.

We turn to Richardson's argument that his resignation from the Florida Bar was not "discipline" and that this court, therefore, could not properly initiate a reciprocal disciplinary proceeding against him under D.C. Bar R. XI § 11. Richardson stresses that he resigned voluntarily and that neither the Florida Bar nor the Florida Supreme Court

found him guilty of any misconduct. Richardson further argues that, in characterizing his resignation as "discipline," the Board erroneously relied on the language of Florida rules that became effective in 1993, whereas Richardson had resigned in 1992.

■ It is true that, when disciplinary proceedings have been initiated, Florida does not require the respondent attorney to admit the charges as a condition of the attorney's resignation from the bar. *See Florida Bar v. Segal*, 663 So.2d 618, 620 (Fla.1995).[2] We agree with the Board, however, that the Supreme Court of Florida's acceptance of Richardson's resignation while a disciplinary proceeding was pending against him constituted "discipline" both in Florida and under our Rule XI § 11. Although the Board erroneously relied on Florida rules that took effect after Richardson's resignation, the changes in the relevant rules from those that governed in 1992 were cosmetic and do not affect our analysis.

### A.

Under the Florida Bar Rules in effect when Richardson resigned, the Florida State Bar had the right to contest an attorney's petition to resign from the bar and, in any event, the Florida Supreme Court had to approve the petition. *See* Fla. Bar R. 3–7.11, Resignation from the Florida Bar (1992); *Florida Bar v. Bassett*, 369 So.2d 583, 585 (Fla.1979) (per curiam) (denying petition to resign and disbarring attorney); *Florida Bar v. Mattingly*, 329 So.2d 9, 9 (Fla.1976) (per curiam) (rejecting petitioner's proposed resignation, as well as Florida Bar's proposed conditions of resignation, and permitting petitioner to resign only on condition that he forego possibility of reinstatement); *see also* Fla. Bar R. 3–7.12, Disciplinary Resignation from the Florida Bar (1993) (requires Florida Supreme Court approval of resignation from Florida Bar).

This required scrutiny of resignations is understandable. When a disciplinary proceeding is pending against an attorney, that attorney's resignation from the bar, without disciplinary consequences, would preserve the right to apply for readmission, as well as to apply for admission in another state, without effective scrutiny of the attorney's professional record—a result entirely at odds with the court's obligation to protect the public and the integrity of the bar. *See Florida Bar v. Davis*, 257 So.2d 14, 15 (Fla. 1971) (denying petition to resign because "granting of this petition would adversely affect the purity of the courts and would hinder the administration of justice and the confidence of the public in the legal profession"); *In re Harper*, 84 So.2d 700, 707 (Fla. 1956) (en banc) ("Before accepting such a [disciplinary] resignation, it should be made to appear in a proper and competent manner not only that the public interest will not be adversely affected by such acceptance but also that the acceptance thereof will not adversely affect the purity of the courts nor hinder the administration of justice."); *see also In re Phillips*, 452 A.2d 345, 347–48 (D.C.1982) (per curiam) (adopting Board recommendation to reject resignation by attorney who plead guilty to a crime of moral turpitude, under "voluntary resignation" rule no longer in effect). Accordingly, after evaluating Richardson's resignation from the bar, the Florida Supreme Court deferred possible reinstatement for at least three years, just as it would in a formal disciplinary proceeding. *See* Fla. Bar. R. 3–7.9, 3–7.11 (1992) (providing that one who resigns may not apply for readmission for three years or however longer the court may impose in its order); *see also* Fla. Bar. R. 3–5.1, 3–7.10, 3–7.12 (1993) (same). In legal as well as practical effect, therefore, Richardson's resignation was a resignation in lieu of—and thus tantamount to—a three-year "disciplinary" suspension in Florida.

Richardson can claim no surprise at this analysis. The Florida Supreme Court has long regarded a lawyer's voluntary resignation when confronted by a pending disciplinary proceeding as a form of discipline permitted by the court. *See Florida Bar v. Aglow*, 445 So.2d 1022, 1022 (Fla.1984) (per curiam)

---

**2.** *Cf.* D.C. Bar R. XI § 12(a)(3), (4) (attorney may consent to disbarment with disciplinary proceedings pending on submission of affidavit affirming that material facts of pending charges are true and attorney has no real defense).

(permitting attorney to resign without right to reapply as reciprocal discipline for disbarment elsewhere); *In re Alfieri,* 428 So.2d 662, 663 (Fla.1983) (per curiam) (noting that resignation with right to reapply was equivalent to disbarment, making disbarment unnecessary); *Harper,* 84 So.2d at 705–07 (concluding that court may permit attorney to resign with disciplinary charges pending, provided court first determines that permitting resignation complies with court's duty to protect public and integrity of courts); *see also Segal,* 663 So.2d at 620 (concluding that attempted voluntary resignation in Florida a nullity because "[t]he only resignation available to an attorney faced with allegations of a disciplinary violation is a 'disciplinary resignation'"). Nor are we the only court to reach this same conclusion about the significance of resignation from the Florida Bar pending disciplinary charges. *See Office of Disciplinary Counsel v. Stevens,* 68 Ohio St.3d 105, 623 N.E.2d 1193, 1194 (1993) (per curiam) (suspending respondent indefinitely from practice of law in Ohio as reciprocal discipline since "[r]espondent's resignation from the Florida Bar was disciplinary in nature").

We also note that the Florida Bar has regarded the resignation of one of its members from the bar of another state as cause for reciprocal discipline in Florida. *See Florida Bar v. Eberhart,* 631 So.2d 1098, 1099 (Fla.1994) (per curiam) (concluding that resignation from bar of Connecticut pending disciplinary charges warrants, as reciprocal discipline, disbarment in Florida with leave to reapply when reinstated in Connecticut). Richardson was clearly on notice, therefore, that his Florida resignation could—indeed, probably would—have disciplinary consequences elsewhere.

**B.**

Richardson argues that the Board decided his resignation was "discipline" in Florida only because it erroneously considered a new rule, Fla. Bar R. 3–7.12, "Disciplinary Resignation From the Florida Bar," which did not become effective until 1993, instead of relying on the previous Fla. Bar R. 3–7.11, "Resignation from the Florida Bar," which was in

effect in 1992 when he resigned. To the contrary, as *Aglow, Alfieri,* and *Harper*—all decided well before the rules change—make clear, the Supreme Court of Florida always has considered a resignation while a disciplinary proceeding is pending to be a form of "discipline"; the fact that the new rule is labeled "Disciplinary Resignation" rather than "Resignation," the label for the old rule, reflects not a change of substance but a more accurate description of what the process has been all along. Our conclusion is buttressed by the fact that in the 1992 rules there was a separate provision for resignations in the absence of pending disciplinary charges. *See* Fla. Bar R. 1–3.4 (1992). (There is no similar provision in the 1993 Florida rules.)

■ The Board, of course, should have applied the rule in effect at the time of the conduct. *See In re Morrell,* 684 A.2d 361, 362 n. 1 (D.C.1996); *cf. In re Turk,* 307 So.2d 162, 163 (Fla.1975) (when considering petition for reinstatement, court will apply eligibility rule in place at time of resignation). But, as we have shown, the error would make no difference to our analysis and thus is harmless.

**V.**

Richardson contends that Rule XI § 11 violates his constitutional rights to due process and equal protection of the laws in three respects: (1) by authorizing an interim suspension without a hearing; (2) by permitting reciprocal discipline upon resignation from the bar of Florida, without a hearing in the District of Columbia on whether Richardson, knowingly and voluntarily, not only waived the right to an evidentiary hearing on the charges in Florida but also, in the absence of a Florida hearing, waived the right to an evidentiary hearing on those charges in the District of Columbia; and (3) by shifting to Richardson the burden of persuading the Board and the court that reciprocal discipline should not be imposed.

Bar Counsel replies that Richardson received from the Florida disciplinary proceedings all the process he was due there, and that subsequently he has received in this jurisdiction a constitutionally adequate op-

portunity to show why the Florida proceedings should not serve as support for reciprocal discipline. We agree with Bar Counsel and the Board.

### A.

The Supreme Court has held that an attorney has a right to procedural due process in a disciplinary proceeding. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225–26, 20 L.Ed.2d 117 (1968); *see also In re Colson,* 412 A.2d 1160, 1164 (D.C.1979) (en banc). Furthermore, when a disciplinary proceeding has taken place in one jurisdiction, the court considering discipline of the same attorney in a second jurisdiction, based on the charge brought in the first jurisdiction, need not adopt the findings of the first jurisdiction. *See Selling v. Radford,* 243 U.S. 46, 48, 37 S.Ct. 377, 377–78, 61 L.Ed. 585 (1917); *Theard v. United States,* 354 U.S. 278, 281–82, 77 S.Ct. 1274, 1276–77, 1 L.Ed.2d 1342 (1957); *In re Reid,* 540 A.2d 754, 758 (D.C.1988); *Florida Bar v. Wilkes,* 179 So.2d 193, 195–96 (Fla.1965); CHARLES W. WOLFRAM, MODERN LEGAL ETHICS 116 (1986). On the other hand, as all these authorities have recognized, a jurisdiction can comply with the Constitution by imposing reciprocal discipline after relying on the evidentiary hearing process provided by another jurisdiction. *See Selling,* 243 U.S. at 49, 37 S.Ct. at 378; *In re Velasquez,* 507 A.2d 145, 147 (D.C.1986) (per curiam). As we stated in *Velasquez:*

> First, another jurisdiction has already afforded the attorney a disciplinary procedure that includes notice, an opportunity to be heard, sufficient proof of misconduct, and a determined sanction. There is no need for a de novo repetition of the entire process.... Second, there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority.

507 A.2d at 147; *see also In re Sanders,* 580 So.2d 594, 594 (Fla.1991) (per curiam) ("We should not allow the practice of law in Florida of one disbarred in his home state."). It is interesting to note, moreover, that the Supreme Court itself uses identical reciprocal disciplinary procedures in disbarment cases. *See* Sup.Ct. Bar R. 8; *In re Isserman,* 345 U.S. 286, 289, 73 S.Ct. 676, 677–78, 97 L.Ed. 1013 (1953), *vacated on other grounds,* 348 U.S. 1, 75 S.Ct. 6, 99 L.Ed. 3 (1954).

### B.

Richardson's claimed right to a hearing before imposition of a temporary suspension under Rule XI § 11(d) is premised on his belief that D.C.Code § 11–2503(b) permits no suspension without a pre-suspension hearing in the District of Columbia, and that due process is violated by the imposition of such discipline without that prescribed hearing. We have already concluded, however, that the statute, § 11–2503(b), does not stand in the way of a reciprocal disciplinary system. Furthermore, we have pointed out that § 11–2503(b) expressly provides for suspension of an attorney, after written charges have been filed, "pending the hearing" thereof—a clear statement that a merits hearing is not required for a temporary suspension. Under the rules, moreover, there can be no temporary suspension unless Bar Counsel has filed certified copies of the disciplinary order from the foreign jurisdiction with the Board and with this court, providing solid evidence—even before temporary suspension—that the respondent attorney has engaged in professional misconduct.

For all these reasons, therefore, Richardson's argument for a hearing before temporary suspension fails.

### C.

Richardson argues that he did not receive due process in the District of Columbia because his resignation in Florida resulted in cancellation of the evidentiary hearing on the merits of the charges against him, a hearing he is entitled to receive before final discipline can be imposed in the District of Columbia—unless waived here. He then contends that, in resigning from the Florida Bar, he did not knowingly and voluntarily waive his right to an evidentiary hearing not only in Florida but also in the District of Columbia. Richardson, in other words, takes the position

that if he waived an evidentiary hearing in Florida, that Florida waiver cannot do double duty because he was not on notice that it would do so; he says that even if his resignation waived his right to an evidentiary hearing that otherwise would have been necessary for imposition of discipline in Florida, the failure to hold that hearing removed the predicate—the due process hearing—necessary to justify reciprocal discipline elsewhere.

We agree with Bar Counsel and the Board that Richardson's loss of an evidentiary hearing in Florida was his own choice; by electing to resign, he waived his right to a hearing where he could have contested the charges. We also agree that, as a consequence of Richardson's Florida waiver, we are entitled to rely—for purposes of final, reciprocal discipline—on the disciplinary result in Florida, properly certified to this court, without affording Richardson the evidentiary hearing on the Florida charges he elected to forego earlier. Put succinctly: if Richardson validly waived an evidentiary hearing in Florida, he is deemed to have waived any evidentiary hearing on the same charges that would otherwise be required by due process before he could be suspended from the practice of law in this jurisdiction. As elaborated below—and contrary to Richardson's contention—his waiver does do double duty.

Richardson does not seriously contend that, if his resignation was "discipline" in Florida, he was entitled, nonetheless, to an evidentiary hearing there; his waiver of a hearing in such circumstances is virtually conceded. Richardson argues, rather, that any alleged waiver of hearing rights was not sufficiently "knowing and voluntary" because he could not anticipate that the District of Columbia would impose reciprocal discipline as a result of his Florida resignation. For this reason, he says, he lacked notice of the consequences of his Florida resignation and thus is entitled to the evidentiary hearing now that he eschewed in Florida. *Cf. In re Drury*, 638 A.2d 60, 63 (D.C.1994) (per curiam) (holding that attorney was entitled to new opportunity to respond to show-cause order when rules and previous case law, as well as Bar Counsel's recommendation and

statements to respondent, suggested Board would impose identical sanction as reciprocal discipline in resignation case, rather than increased sanction based on de novo review of facts underlying resignation).

It is well established that an individual may voluntarily waive process to which he or she has a right. *See D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972) (holding that contract with provision permitting injured party to obtain judgment against defaulting party without notice or hearing does not offend Due Process Clause); *Colson*, 412 A.2d at 1164, 1165 n. 8 (concluding that guilty plea to criminal offense acts as waiver of right to litigate same factual issues before Board). There even is support in Supreme Court case law for the proposition that in some circumstances one may waive a constitutional right without realizing the full extent of the consequences. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 235, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973) ("Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection.... [*Overmyer*] explicitly [left] open the question whether a knowing and intelligent waiver need be shown."). We need not resolve that issue, however, because both Florida and District of Columbia case law put Richardson on clear notice of what the consequences of his resignation from the Florida bar would be for reciprocal discipline proceedings elsewhere.

Florida long has regarded a resignation from its bar pending disciplinary charges as a form of discipline that will trigger reciprocal discipline in another jurisdiction. Indeed, the Florida Supreme Court has compared the acceptance of such a resignation to acceptance of a plea bargain. *See In re Brush*, 358 So.2d 1355, 1357 (Fla.1978). The court made clear in *Brush* that the attorney must accept the terms and consequences of the resignation, however harsh or unforeseen, because of "the potential harm to the public inherent in the halt of disciplinary proceedings which results from the acceptance of a resignation while those proceedings are pending." *Id.; cf. Colson*, 412 A.2d at 1164,

1167 (holding that guilty plea waives opportunity to contest underlying facts). Thus, Richardson was deemed to know, in Florida, that his resignation effectively invited all disciplinary consequences that could flow, in Florida and elsewhere, from his failure to invoke his right to an evidentiary hearing in the disciplinary proceeding his resignation aborted.

Furthermore, this court previously has imposed reciprocal discipline on Richardson himself for the same kind of conduct (charging an excessive fee) he was accused of—and resigned rather than litigate—in Florida. *See In re Richardson,* 602 A.2d 179, 182 (D.C.1992) (per curiam) (ninety-one day suspension). Richardson therefore cannot plead ignorance of the workings of our own reciprocal discipline system.

■ Accordingly, in light of the case law available to Richardson in the jurisdictions where he has been admitted to the bar, he cannot claim ignorance of the potential consequences of his resignation. *See Drury,* 638 A.2d at 63 n. 12 (noting that case law provides adequate notice of possibility of greater sanction on reciprocal discipline); *cf. In re Hines,* 482 A.2d 378, 386 (D.C.1984) (per curiam) (adopting recommendation of lesser sanction but "notifying" bar that same action will have more serious consequences in future). Because Richardson was on clear notice of the consequences in the District of Columbia of his resignation/ suspension from the Florida Bar, his waiver of an evidentiary hearing in Florida—which would have served as the due process hearing required for reciprocal discipline here—was also a waiver of an evidentiary hearing for District of Columbia purposes.

Richardson in any event was entitled to a hearing under Rule XI § 11(c), which affords an opportunity to avoid reciprocal discipline by demonstrating, for example, that "[t]he procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process," D.C. Bar R. XI

§ 11(c)(1), or that "[t]here was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject," D.C. Bar R. XI § 11(c)(2). Richardson, however, declined the opportunity to make such showings and, therefore, should not be heard to ask for that opportunity here.

### D.

Richardson contends, however, that our rules requirement, D.C. Bar R. XI § 11(c), that the respondent attorney has the burden to show cause why we should not impose reciprocal discipline impermissibly shifts the burden of persuasion to the respondent. He maintains that this violates both his due process and equal protection rights, because it irrationally distinguishes between lawyers charged in a foreign jurisdiction and lawyers charged in the District. Specifically, Richardson argues that the Equal Protection Clause is implicated here because D.C. Bar R. XI § 11(d) shifts the burden of persuasion to the respondent attorney, whereas in other cases Bar Counsel has the burden to sustain the charges by clear and convincing evidence. *See In re Williams,* 464 A.2d 115, 119 (D.C. 1983) (per curiam).

■ These arguments have no merit whatsoever. The Supreme Court explicitly has endorsed this burden-shifting practice. *See In re Isserman,* 345 U.S. at 289, 73 S.Ct. at 677 ("Our rule puts the burden upon respondent to show good cause why he should not be disbarred."). It is not irrational to shift the burden of persuasion to attorneys who have already been disciplined in a foreign jurisdiction and face charges of reciprocal discipline, while placing that burden on Bar Counsel when charging attorneys with misconduct for the first time. *See Velasquez,* 507 A.2d at 147. Richardson's due process and equal protection challenges accordingly fail.[3]

---

**3.** Richardson argues that the Board resorted to information outside the record. We find no evidence that the Board considered facts other than Richardson's own submissions and the contents of his Florida disciplinary file forwarded by the

Florida Bar to Bar Counsel and properly submitted to the Board.

He also claims that he had no opportunity to respond to Bar Counsel's opposition to his motion to dismiss. Richardson was not constitu-

## VI.

Having found Richardson's exceptions unpersuasive, we consider the sanction drawn from Florida and recommended by the Board: a three year suspension with reinstatement conditioned upon proof of fitness. Like the Board, we are troubled by the fact that a three year suspension exceeds the outside range of discipline typically imposed for a single instance of charging an excessive fee. *See In re Landesberg,* 518 A.2d 96, 97 (D.C.1986) (sixty day suspension); *In re Waller,* 524 A.2d 748, 751 (D.C.1987) (thirty day suspension); *see also In re Ray,* 675 A.2d 1381, 1387 (D.C.1996) (six month suspension and refund of all fees to client when illegal fee coupled with negligent misappropriation); *In re Knust,* 598 A.2d 434 (D.C. 1991) (per curiam) (six month suspension for excessive fee coupled with two other disciplinary violations on reciprocal discipline). In support of imposing this heavy sanction, however, the Board noted that Richardson previously has been the subject of reciprocal discipline for the same type of conduct and received a ninety-one day suspension in this jurisdiction. *See Richardson,* 602 A.2d at 180. Moreover, the Board cited the strong presumption in favor of reciprocal discipline. *See In re Zilberberg,* 612 A.2d 832, 834 (D.C. 1992). Finally—and of considerable significance as we see it—the Board observed that Richardson had made no substantive argument that the proposed suspension was excessive. *See* D.C. Bar R. XI § 11(c)(3), (4) (respondent may prevent imposition of the same discipline by showing that imposition of same discipline would result in grave injustice or that conduct warrants substantially different discipline in District of Columbia). In the absence of any proffered basis for a lesser sanction, therefore, the Board found no reason not to impose reciprocal discipline.

■ "A recommendation of the Board on Professional Responsibility with respect to a proposed sanction comes to us with a strong presumption in favor of its imposition." *In re Goffe,* 641 A.2d 458, 463 (D.C. 1994) (per curiam). "While the ultimate choice of a sanction rests with this court, our rule requires us to respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Ryan,* 670 A.2d 375, 380 (D.C.1996) (citation and internal quotation marks omitted). We cannot say that the Board's exercise of judgment here was unreasonable. We also note that Richardson has failed to file, during the course of his interim suspension, the required affidavit under D.C. Bar R. XI § 14(g). We therefore defer to the Board's sense of equity and adopt the recommended discipline, including the requirement that Richardson shall not be eligible for reinstatement until three years after he complies with his responsibilities under this rule. *See In re Slosberg,* 650 A.2d 1329, 1331–32 (D.C.1994).[4]

*So ordered.*[5]

---

tionally entitled to rebut Bar Counsel's opposition, because he already had been granted "the right to be heard" in Florida and declined the opportunity. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. No Constitutional requirement guarantees that respondent must have the last word. In any event, Richardson suffered no prejudice as a result of this lack of opportunity to respond before the Board because he has had the opportunity to respond to all of Bar Counsel's arguments in his brief before this court. We also note that Richardson has taken the opportunity to file many motions, both before us and before the Board, addressing all of his arguments.

4. In *Richardson,* we deemed respondent to have served the term of his suspension nunc pro tunc from that date we imposed his interim suspen-

sion, despite his failure to file the required affidavit until nearly three months later. *See Richardson,* 602 A.2d at 181–82. We note that at that time we did not invariably draw a suspended attorney's attention to the appropriate rule. *See In re Gardner,* 650 A.2d 693, 697 n. 7 (D.C.1994). In the present case, Richardson received notice in the interim suspension order date June 27, 1995, of D.C. Bar R. XI § 14, and the potential impact on the timing of eligibility for reinstatement of a failure to comply. Accordingly, there is no reason not to apply the rule set forth in *Slosberg.*

5. On January 23, 1996, Bar Counsel notified this court pursuant to D.C. Bar R. XI § 11(b), (d), that the United States Court of Appeals for the District of Columbia Circuit had disbarred Rich-

ardson as reciprocal discipline based on his Florida resignation. On March 12, 1996, we ordered the Board to determine whether reciprocal discipline was warranted based on this federal court of appeals disbarment. This order was designated a part of Board Docket No. 24–96 and combined with this Appeal, No. 95–BG–639. In its report, the Board recommended dismissing this second reciprocal complaint, and Bar Counsel

has taken no exception to this recommendation. We therefore order the second reciprocal action, Board Docket No. 24–96, dismissed.

