In re T. Carlton RICHARDSON。

No. 98–SP–594.

District of Columbia Court of Appeals.

Argued Jan. 11, 2000.
Decided Sept. 21, 2000.

T. Carlton Richardson, pro se.

Catherine L. Kello, Assistant Bar Counsel, for the Office of Bar Counsel. Leonard H. Becker, Bar Counsel at the time the brief was filed, and Donna M. De Silva, Assistant Bar Counsel, were on the brief.

Before TERRY, STEADMAN, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

T. Carlton Richardson, respondent, was suspended on an interim basis from the District of Columbia Bar following his resignation from the Florida Bar due to pending disciplinary proceedings in Florida. *See In re Richardson,* No. 95–BG–639 (D.C. June 27, 1995). On April 17, 1997, this court imposed final discipline by suspending respondent from practicing law in the District of Columbia for three years with reinstatement conditioned on proof of fitness. *See In re Richardson,* 692 A.2d 427, 428 (D.C.1997), *cert. denied,* 522 U.S. 1118, 118 S.Ct. 1056, 140 L.Ed.2d 118 (1998). Following Bar Counsel's investigation into allegations that respondent had continued to practice law while suspended on an interim basis, this court issued an order for respondent to show cause why he should not be held in contempt of the suspension order. Judge Retchin of the Superior Court was designated as a judge of this court pursuant to D.C.Code § 11–707(a) (1995 Repl.) to adjudicate the contempt. On March 6, 1998, Judge Retchin found respondent guilty of criminal contempt for failing to comply with the June 27, 1995, interim suspension order; she sentenced respondent to 120 days imprisonment, suspended that sentence, and placed respondent on three years probation conditioned on payment of a $200 fine, $50 court costs, reporting to the probation office the day after sentencing, compliance with the affidavit requirements of D.C. Bar R. XI, § 14 (2000), and any further court orders. Respondent does not dispute that he willfully engaged in the practice of law subsequent to the court's June 27, 1995, interim suspension order, but argues instead that an interim suspension without thirty days to close out his practice was a violation of the Equal Protection Clause because attorneys suspended or disbarred in original discipline actions are permitted thirty days to wind up their practices. Respondent also raises numerous procedural objections, including challenges to the court's authority to proceed against him as it did. We conclude that the constitutional argument is not presented on the facts of this case, reject the procedural objections, and affirm the conviction for contempt.

## I. Validity of the Contempt Proceedings

■ First, respondent argues that a single judge of this court lacks jurisdiction to find contempt or to impose a sentence because contempt proceedings are "cases and controversies" under Article III of the Constitution and D.C.Code § 11–705(b) provides that "[c]ases and controversies shall be heard and determined by [three-judge] divisions" of this court. Respondent's argument overlooks the authority conferred by D.C.Code § 11–741(a) to a single judge of this court to "punish for disobedience of an order." Judge Retchin, sitting as a designated judge of this court under § 11–707(a), was thereby empowered to act singly in adjudicating and sentencing respondent for violating the court's interim suspension order. This court has upheld a procedurally similar finding of criminal contempt in which a single Superior Court judge, sitting by designation, sentenced a respondent in a disciplinary proceeding after making both findings of fact and conclusions of law. *See In re Burton,* 614 A.2d 46, 47 & n. 1 (D.C.1992).

## II. Personal Jurisdiction

■ Respondent contends that the failure to personally serve him with Bar Counsel's motion or the court's Order to Show Cause prevented this court from obtaining personal jurisdiction over him.

Even prior to Bar Counsel's motion for a show cause order, respondent was subject to the jurisdiction of the court because he was a member of the Bar who had been suspended by the court. *See* D.C. Bar Rule XI, § 1.[1] Therefore, this court properly exercised jurisdiction over respondent.[2]

## III. Probable Cause

Respondent argues that an initial showing of probable cause is required prior to a finding of criminal contempt. "A criminal contempt proceeding is not a criminal prosecution, and consequently not all procedures required in a criminal trial are necessary in a hearing on a charge of contempt." *Brookens v. Committee on Unauthorized Practice of Law*, 538 A.2d 1120, 1122 (D.C.1988) (quoting *In re Wiggins*, 359 A.2d 579, 580 (D.C.1976)). Moreover, there is no prejudice to respondent because Bar Counsel's motion for an order to show cause was based, *inter alia*, on respondent's actual appearance before Judge Queen on four occasions after the date of the suspension order, providing sufficient probable cause to support a charge of criminal contempt.

## IV. Jury Trial

Respondent contends that the sentence imposed for criminal contempt was unconstitutional and statutorily impermissible, because he was denied a jury trial. The Sixth Amendment right to jury trial arises with "serious" or non-petty offenses. *See Frank v. United States*, 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). "The most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission." *Id.* Where no maximum penalty is authorized, however, such as in the District of Columbia contempt statute, *see* D.C.Code § 11–741(a), the actual sentence imposed provides the best gauge to the seriousness of the offense, and "sentences for criminal contempt of up to six months may constitutionally be imposed without a jury trial." *Frank*, 395 U.S. at 149, 89 S.Ct. 1503. "The appropriate standard for determining the seriousness of contempts committed in the District of Columbia local courts is to be found in the D.C.Code provisions concerning trial by jury, § 16–705(b)." *In re Evans*, 411 A.2d 984, 992 (D.C.1980); *accord Brookens*, 538 A.2d at 1123. Contempt is a petty offense unless the penalty includes a fine in excess of $1000 or imprisonment exceeding six months. *See* D.C.Code § 16–705(b)(1) (providing for trial by a judge in a criminal contempt case except where offense punishable by imprisonment over six months or fine exceeding $1000). The additional imposition of three years probation does not convert a petty offense into one requiring a jury trial. *Cf. Frank*, 395 U.S. at 150, 89 S.Ct. 1503 (noting federal statute authorizing imposition of probation up to five years for petty offenses does not convert a petty offense into an offense requiring a jury trial); D.C.Code § 16–710(b) (permitting the imposition of probation up

---

1. The District of Columbia Bar Rules provide:
   All members of the District of Columbia Bar ... and all persons who have been suspended or disbarred by this Court are subject to the disciplinary jurisdiction of this court and its Board on Professional Responsibility.
   D.C.Bar. R. XI, § 1(a).

2. The court's Order to Show Cause was served upon Respondent by mail. The District of Columbia Appellate Rules provide in pertinent part: "Immediately upon the entry of an order or judgment, the clerk shall serve by mail upon each party to the proceeding a copy of any opinion accompanying the order

or judgment. If there is no opinion, the clerk shall serve a copy of the order or judgment." D.C.App. R. 36(b) (2000). Bar Counsel's motion to show cause also was mailed to Respondent. *See* D.C.App. R. 25(c) (2000) ("Service may be personal or by mail. ... [S]ervice shall be made upon [an unrepresented] party by personal delivery, or by mailing a copy addressed to the party at the party's place of business or residence."). Respondent's acknowledgment of receipt of that motion by his response filed with this court on October 21, 1997, demonstrates that respondent had actual notice of the motion.

to five years for both serious and petty offenses). As respondent was sentenced to 120 days imprisonment, and immediately placed on three years probation, he is not entitled to a jury trial.

### V. Equal Protection

██ Respondent has never denied that he practiced law after the date of the interim suspension order, but he argues that he was entitled to thirty days to close out his practice as is permitted under D.C.Bar. R. XI, § 14(f) which provides that discipline "shall be effective thirty days after entry unless the Court directs otherwise." He asserts that the District of Columbia Bar Rules violate his right to equal protection because attorneys suspended or disbarred in original discipline cases are permitted thirty days to wind up their practices, whereas attorneys sanctioned in reciprocal discipline proceedings are not allowed that grace period. Judge Retchin ruled that the textual difference between Rule XI, § 14(f), concerning original discipline orders, and Rule XI, § 11(d), concerning orders in reciprocal proceedings, clearly established that the interim suspension order in respondent's case took effect immediately.

██ With respect to the constitutional argument, we need not reach the issue. First, it is raised on appeal for the first time. "This court ordinarily declines to consider constitutional contentions which are being presented for the first time on appeal unless the alleged constitutional shortcoming in the proceedings was so plain that the judge should have ruled on it notwithstanding the litigant's failure to raise it." *Ko v. United States,* 694 A.2d 73, 83 (1997) (per concurring opinion of Schwelb, J., for a majority of the court); *aff'd,* 722 A.2d 830 (D.C.1998) (en banc), *cert. denied,* 526 U.S. 1094, 119 S.Ct. 1512, 143 L.Ed.2d 664 (1999). We find no obvious constitutional defect here. Second, even assuming, *arguendo,* that respondent were entitled to thirty days to wind up his practice, respondent practiced law beyond

thirty days from the date of the June 27, 1995, interim suspension order. Respondent testified that on August 2, 1995, knowing that he was suspended, he made a filing with the court indicating that he had published notices in the *Daily Washington Law Reporter* and *Afro–American* newspapers in an estate case, which he signed as attorney for the personal representatives of the estate. Therefore, he knowingly represented clients beyond the thirty day period after the suspension order, during which he claims he should have been permitted to wind up his practice prior to suspension.

Furthermore, respondent's contempt conviction was based not only on his practicing law after he had been suspended, but on his violation of the court's order to comply with Rule XI, § 14(c), which required that he promptly notify his clients of the suspension. The hearing judge explained the rule in making her findings:

> And this rule provides that an attorney ordered to be disbarred or suspended shall promptly notify by registered or certified mail, return receipt requested, all clients involved in litigative matters or administrative proceedings in any court of the District of Columbia or in pending matters before any District of Columbia Government agency of the Order of Disbarment or Suspension, and of the attorneys' consequent inability to act as attorney after the effective date of the order.

> And here the Order was filed on June 27th, 1995. So I, I find that there was an Order in effect directing Mr. Richardson not to practice because he was suspended and that he was directed to comply with Rule 11, Section 14.

> . . . .

> ... I'm not able to find that Mr. [Richardson] complied with the rule which requires prompt notice to his clients in the [divorce] matter. I credit the testimony of [the client] that he was not notified of the suspension until subsequent to the proceedings.

. . . .

. . . [B]ased on the record before me, I find that Mr. Richardson has willfully and intentionally violated the Court Order to . . . comply with Rule 11, Section 14. So, I find Mr. Richardson in criminal contempt.

Given that respondent practiced law after the thirty day period following his suspension, and was also adjudicated in contempt for violating the court's order to notify his clients of his suspension, we need not reach his constitutional argument.

## VI. Insufficiency of the evidence

■ Respondent mentions toward the end of his reply brief that there was insufficient evidence for a finding of contempt, and, by implication, that the hearing judge erred by denying his motion for a dismissal of the charges. We review the denial of a motion for a directed verdict in the light most favorable to the prevailing party, *see Cowan v. Youssef,* 687 A.2d 594, 598 (D.C. 1996), and must affirm "unless the evidence . . . would permit reasonable persons to return a verdict only in favor of the moving party." *District of Columbia v. Minor,* 740 A.2d 523, 529 (D.C.1999) (citation omitted).

■ A person who willfully disobeys a court order may be adjudicated in contempt. *See In re Kirk,* 413 A.2d 928, 930 (D.C.1980) (per curiam). The hearing judge found that "even by Mr. Richardson's own admission, by July 5th, 1995, he had actual notice that he was suspended and he participated in proceedings thereafter before Judge Queen and thereafter during the suspension made filings in connection with a probate matter." As noted, *supra,* even if respondent had thought he had thirty days to wind up his affairs before the suspension order took effect, his actions beyond that thirty day period were

contemptuous. Therefore, there was sufficient evidence to support a conviction for criminal contempt.

## VII. Respondent's other arguments

■ The remaining objections on appeal are either frivolous or not properly before this court. Respondent contends that a violation of a bar disciplinary rule cannot be the basis for a criminal prosecution. In the instant case, respondent was found in criminal contempt for violating an order of this court, not for violating a bar disciplinary rule. This court has the power to enforce its orders with contempt. *See* D.C.Code § 11–741; *see also Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873) ("The power to punish for contempts is inherent in all courts. . . .").

■ Respondent raises procedural and due process concerns regarding the underlying interim suspension order.[3] The matter on appeal is the contempt conviction, not the interim suspension order, which is *res judicata. See In re Richardson,* 692 A.2d 427 (D.C.1997) (suspending Respondent from practice of law).

■ Respondent also asserts that the disclosure of his bank records pursuant to a subpoena violated his Fourth Amendment right to be free from unreasonable searches and seizures. "[A] depositor has no expectation of privacy and thus no 'protectable Fourth Amendment interest' in copies of checks and deposit slips retained by his bank." *United States v. Payner,* 447 U.S. 727, 732, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (quoting *United States v. Miller,* 425 U.S. 435, 437, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)). Therefore respondent's argument is without merit.[4]

■ Finally, respondent contends that his Fifth Amendment privilege against self-incrimination was violated when Bar

---

**3.** Respondent argues that he was denied a pre-suspension hearing and that the interim suspension order provided insufficient notice of the charged misconduct and failed to state the date on which it was to take effect.

**4.** We note that Bar Counsel followed the procedure for obtaining records by subpoena outlined in Bar Rule XI, § 18 (2000).

Counsel's subpoenas were enforced. Respondent cannot rely upon the Fifth Amendment for protection from revelations emanating from properly subpoenaed bank records. *See Baltimore City Dep't of Soc. Servs. v. Bouknight,* 493 U.S. 549, 555, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990) ("[A] person may not claim the [Fifth] Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded.").

Accordingly, we affirm the judgment of criminal contempt.

*Affirmed.*